Mark W. Dossett, Attorney at Law Benton County Rural Development Authority c/o Davis Law Firm 10 East Mountain Street Fayetteville, AR 72702-1688
Dear Mr. Dossett:
You have requested an Attorney General opinion, pursuant to A.C.A. §25-19-105(c)(3)(B), a section of the Freedom of Information Act (the "FOIA") (A.C.A. § 25-19-101 through -109) (Repl. 1996 Supp. 2001), concerning the release of certain documents in the custody of the Benton County Rural Development Authority (the "BCRDA"). The Attorney General is directed by law to issue an opinion as to whether the custodian's determination regarding the release of the requested records is consistent with the FOIA. A.C.A. § 25-19-105(c)(3)(A) and (B).
You report the following background information:
 The BCRDA is attempting to hire an operator to manage and operate the BCRDA's water systems in Benton County, Arkansas. The BCRDA published a solicitation for applications and has received a number of applications and resumes. The applications and resumes vary, but for the most part they contain the typical information, such as work history, qualifications, etc. The BCRDA has not yet made a hiring decision, and the interviewing and hiring process is still ongoing.
 The BCRDA has received a request pursuant to the Arkansas Freedom of Information Act for access to "all documents, written, recorded digital or otherwise, pertaining to applicants for the position of operator or manager for the Benton County Rural Development Authority water districts.". . .
* * *
 One specific concern of the BCRDA is that we are seeking applicants in a specialized field. We are concerned that the applicants may suffer adverse consequences from their current employers if it is disclosed that the applicant is looking for another job. . . .
 The BCRDA has determined that the requested documents are required to be disclosed under the Arkansas FOIA with certain information redacted to comply with the applicable privacy test and any other applicable exclusion of A.C.A. § 25-19-105(b).
Against this backdrop, you have posed the following three questions:
1. Is the BCRDA's decision consistent with the Arkansas FOIA?
 2. Since the applicants are neither successful [n]or unsuccessful at this point, should the BCRDA treat the documents as "personnel records" or simple public records for the purpose of the [sic] applying the proper privacy test or tests?
 3. Under whichever test is applied, does the person whose information is being disclosed have a sufficient privacy interest to require the BCRDA to redact the applicant's name if the applicant so requests?
RESPONSE
In my opinion, subject to the conditions set forth below, I believe the answer to your first question is "yes." With respect to your second question, I believe the documents should be treated as "simple public records" for the purpose of determining their disclosability. However, the courts are split on this question, and appellate court clarification appears warranted. Barring extraordinary circumstances in any particular case, I believe the answer to your third question is "no."
Question 1: Is the BCRDA's decision consistent with the ArkansasFOIA?
I believe the answer to this question is "yes," subject to the condition that the "certain information" you intend to redact is indeed of the sort that the FOIA, the constitution or some other law exempts from disclosure. Although I cannot determine what you should redact without reviewing the actual documents at issue, I can and will opine that the BCRDA is subject to the FOIA and that job applications and resumes are disclosable, subject to the qualifications set forth below. I should further note that this particular question is sufficiently broad that it will entail my answering your other two questions as well.
The statutory authority for the organization of rural development authorities is set forth in chapter 188 of title 14 of the Arkansas Code. Section 14-188-109 provides that "[a] rural development authority shall constitute a public body corporate and politic, exercising public and essential government functions. . . ." See Ark. Ops. Att'y Gen. Nos.99-277 (locating rural development authorities within a class of organizations that "might be considered `units of government' insofar as they not only implement but make public policy"); 97-024 ("[P]urchases made by the rural development authorities would be considered governmental purchases.") Given its status as a "public body" exercising "governmental functions," I believe the BCRDA is clearly subject to the "public records" provisions of the FOIA. See A.C.A. § 15-19-103(5)(A) (defining "public records" as including those held by any "governmental agency").
My predecessors and I have opined on numerous occasions that job applications, including resumes, are "public records" subject to inspection and photocopying, provided that all exempt information has first been deleted. See, e.g., Ark. Ops. Att'y Gen. Nos. 2001-368; 2001-091; 2001-080; 99-013; 98-102; 97-042; 96-190; 95-291; 95-113; 94-187; 93-421; 93-263; 93-113 and 90-248. Among the categories of exempt information to be deleted are social security numbers, see Ark. Ops. Att'y Gen. Nos. 2001-203 and 99-011 (citing 5 U.S.C. § 552a, the "Federal Privacy Act"; medical information and scholastic transcripts, see A.C.A. § 25-19-105(b)(2); and unlisted telephone numbers, see Ark. Ops. Att'y Gen. Nos. 99-054 and 93-403.
The documents at issue in your request further appear to be subject to the County Government Code, which independently recognizes a "right to individual privacy" in public records. Specifically, A.C.A. §14-14-110(b) (Repl. 1998) provides that "[p]ersonal records, medical records, and other records which relate to matter in which the right to individual privacy exceeds the merits of public disclosure shall not be available to the public unless the person they concern requests they be made public." In his treatise on the FOIA, Professor Watkins offers the following commentary on this statutory provision:
 The privacy statute for county records extends beyond the FOIA's privacy exemption, which applies only in the context of personnel records. In addition, the county statute seems to contemplate a simple balancing test in which privacy interests and disclosure interests stand on equal footing, while the personnel records exemption in the FOIA requires use of a balancing test that tips the scales in favor of disclosure.
J. Watkins, The Arkansas Freedom of Information Act 158 (3rd ed. 1998); see also Ark. Op. Att'y Gen. No. 2001-373 (discussing the scope of this statute). The balancing test contemplated in this statute will necessarily entail a factual analysis of the sort I am neither equipped nor authorized to undertake.
Public records that are otherwise releasable may further be withheld if they contain information in which an individual has a constitutional privacy interest. The Arkansas Supreme Court has recognized that the constitutional right of privacy can supersede the specific disclosure requirements of the FOIA, at least with regard to the release of documents containing constitutionally protectable information. SeeMcCambridge v. City of Little Rock, 298 Ark. 219, 766 S.W.2d 909 (1989). The McCambridge court held that a constitutional privacy interest applies to matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed. If the custodian of the records determines factually that any information in the requested records meets the three prongs of the test laid out by the McCambridge court, he must then consider whether the governmental interest in disclosure under the FOIA (i.e., the public's legitimate interest in the matter) outweighs any privacy interest in their non-disclosure. Again, this determination will be a factual one, based upon the information available to the custodian.
As you acknowledge in your request, this office has in the past distinguished between the job applications of unsuccessful and successful candidates, holding that those in the latter group constitute "personnel records" subject not only to constitutional protection, but also to statutory protection under the FOIA. As my immediate predecessor summarized in Ark. Op. Att'y Gen. No. 98-102:
 This office has consistently opined that the job applications of both successful and unsuccessful job applicants are" public records," within the meaning of the FOIA, and are not subject to any exemption from disclosure. See, e.g., Ops. Att'y Gen. Nos. 96-190; 95-291; 95-113; 93-263; 93-114; 90-248. (Information that is exempted from disclosure by some other exemption or requirement, such as medical records, social security numbers, etc., must be excised from the job applications prior to their release. See Op. Att'y Gen. No. 96-190.) I have also opined, however, that the job applications of successful job applicants are "personnel records" within the meaning of the act, and that they are therefore disclosable only to the extent that the disclosure does not constitute a "clearly unwarranted invasion of personal privacy." A.C.A. § 25-19-105(b)[12]; Ops. Att'y Gen. Nos. 96-190; 95-113; 94-187. The question of whether the release of particular records would constitute a "clearly unwarranted invasion of personal privacy" is a question of fact that must be determined on the basis of the specific information that is contained in the record. The Arkansas Supreme Court has employed a balancing test to analyze such information, weighing the public's interest in knowing the information against the individual's interest in keeping the information private. See Young v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992). I have not been provided with copies of the job applications in question and therefore cannot make a determination as to the nature of the information contained in them. I have previously noted, however, that it would be unusual for a job application to contain information sufficiently private to warrant withholding the record from public inspection. See Op. Att'y Gen. No. 95-291.
However, even though this office has concluded that the category of "personnel records," as a definitional matter, cannot include job applications of unsuccessful candidates, two circuit courts have split on this issue. Compare Little Rock School District v. Little RockNewspapers, Inc., Pulaski County Circuit Court Case No. 87-7638 (1987) (classifying applications and list of applicants as personnel records but concluding that disclosure would not result in clearly unwarranted invasion of personal privacy) and Little Rock Newspapers, Inc. v. Boardof Trustees of the University of Central Arkansas, Pulaski County Circuit Court Case No. 87-6930 (1987) (declining to classify applications and list of applicants as personnel records). Moreover, in contrast to the position taken by this office, Professor Watkins has concluded: "The better view is that the term `personnel records' includes documents pertaining to job applicants, whether or not they are ultimately hired." J. Watkins, supra at 133. This office has on various occasions acknowledged this split of authority and remarked that the issue awaits resolution at the appellate court level. See, e.g., Ark. Ops. Att'y Gen. Nos. 95-201, 93-421, 93-403 and 93-114. Regardless of whether this distinction applies within the category of job applications, this office has further concluded that the resumes of job applicants cannot be considered personnel records. Ark. Op. Att'y Gen. No. 95-291.
As a practical matter, I believe the FOIA will dictate disclosure regardless of which standard of privacy protection applies in this instance. I fully agree with the following analysis by Professor Watkins on this issue:
 [T]he distinction drawn by the Attorney General will not make much difference in terms of the availability of job applications under the FOIA. As the Attorney General has observed," job applications, whether of successful or unsuccessful applicants, are generally subject to disclosure under the act." Disclosure of the applications of successful candidates for employment will generally not constitute a clearly unwarranted invasion of personal privacy, although particular information might be covered by other exemptions. The applications of unsuccessful candidates will obviously be open to the public if the personnel exemption is inapplicable, but some information may be protected by other exemptions or, in unusual cases, by the constitutional right to privacy.
Watkins, supra at 133-34 (footnotes omitted, quoting Ark. Op. Att'y Gen. No. 96-190).
You express concern in your request that the selection process is still ongoing and that an applicant might be understandably reluctant to have the fact of his candidacy possibly disclosed to his current employer. The situation you describe is materially indistinguishable from one addressed in the enclosed Ark. Op. Att'y Gen. No. 93-114, in which my immediate predecessor considered the privacy concerns of applicants for employment at Westark Community College. My predecessor noted that the pertinent privacy inquiry was in all likelihood the three-part analysis set for inMcCambridge, supra, not the unwarranted-invasion-of-privacy analysis applicable to personnel records. He further concluded that although this analysis would necessarily turn on the facts of each case, the public interest in disclosure would normally outweigh the applicant's interest in privacy. Without reproducing my predecessor's analysis, I will merely note that I concur in all respects with his reasoning and conclusions.
Question 2: Since the applicants are neither successful [n]orunsuccessful at this point, should the BCRDA treat the documents as"personnel records" or simple public records for the purpose of the [sic]applying the proper privacy test or tests?
For the reasons stated in my response to your first question, I believe the applications should be treated as "simple public records." However, as noted above, the courts are split on this issue. Clarification at the appellate court level appears warranted. Notwithstanding my opinion that the documents do not comprise "personnel records," I should note that they in all likelihood fall within the scope of A.C.A. § 14-14-110(b), which independently provides a measure of protection of privacy. See
discussion supra.
Question 3: Under whichever test is applied, does the person whose information is being disclosed have a sufficient privacy interest to require the BCRDA to redact the applicant's name if the applicant so requests?
Again for reasons set forth above, absent extraordinary individual circumstances that would dictate a different conclusion, I believe the answer to this question is "no."
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
Enclosure